IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SALEH OMAR GHANEM                                                                                                          PLAINTIFF

v.                                                                               CIVIL ACTION NO. 1:24-CV-182-SA-RP

BRYAN MORROW, In his Individual Capacity                           DEFENDANT

ORDER AND MEMORANDUM OPINION

Saleh Omar Ghanem initiated this civil action by filing his Complaint [1] on September 27, 2024. Pursuant to 42 U.S.C. § 1983, he brings First and Fourth Amendment claims against Mississippi Highway Patrol Trooper Bryan Morrow, in his individual capacity. Morrow filed a Motion for Partial Summary Judgment [30] seeking dismissal of the excessive force claim. Having considered the parties' filings and the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*

On September 27, 2021, Trooper Morrow was assigned to "ride along" with recent Patrol School graduate Toy Pharr. The troopers were charged with patrolling Lee County, Mississippi.

During the patrol, Pharr initiated a traffic stop of a vehicle. The driver of that vehicle turned into a Chevron gas station located in Nettleton, Mississippi. The troopers tailed the driver as he pulled into the parking lot and circled behind the convenience store before pulling into a parking spot near the entrance. Morrow directed Pharr to park his patrol car in front of the entrance to the convenience store so that the dash cam could capture the stop.[1]

The troopers then exited the patrol car and approached the parked car. Pharr spoke with the driver and, after learning he did not have a license or proof of insurance, instructed him to exit the

---

[1] The Court has reviewed and considered dash camera video from the patrol car, as well as security camera footage from the Chevron station. *See* [30], Ex. 2; [30], Ex. 3. The Court notes that the dash camera video contains audio, while the security camera footage does not.

vehicle so that Pharr could perform a weapons search of his person. After Pharr completed the weapons search, the troopers directed the driver to sit in the passenger seat of the patrol car so that they could obtain his information.[2] Pharr entered the driver's seat, shut the door, and conversed with the driver. Morrow remained standing by the passenger door with the patrol car positioned between him and the entrance to the convenience store.

A few minutes later, Ghanem, the owner of the Chevron gas station, exited the convenience store and walked to the front of the patrol car. He asked Morrow if he could move the patrol car away from the entrance of the convenience store. Morrow replied, "the stop is right here, when we finish the stop, we will be gone." [30], Ex. 2 at 9:10-9:14.[3] Ghanem continued to stand in front of the patrol car and tried to discuss moving the car with Morrow who repeatedly told him to go back into the store. Morrow then walked toward Ghanem and stopped in front of the patrol car and pointed toward the convenience store and said "go back in your store and get off my traffic stop. That's the third time I've asked you." *Id.* at 9:48-9:51. Morrow then walked back to the passenger door of the patrol car. Ghanem did not move, and Morrow continued to repeatedly tell him to go back into the store. Morrow then told Ghanem, "get in this store before I take these handcuffs out." *Id.* at 10:06-10:09. In response, Ghanem walked back and stood by the entrance of the store and continued to watch the traffic stop. This exchange of words between Ghanem and Morrow lasted roughly a minute and twenty seconds.

A few seconds later, Morrow walked to the front of the patrol car and called out to Ghanem, "come here man" while pointing to the front of the patrol car. *Id.* at 10:44-10:50. Ghanem started walking toward the patrol car and Morrow told him he was under arrest. In response, Ghanem

---

[2] Neither trooper explained the decision to have the driver sit in the patrol car's passenger seat. [30], Ex. 4 at 18; [30], Ex. 1 at 46-47. Notwithstanding, the treatment of the driver is irrelevant to the issue at hand.
[3] Again, the dash camera video contains audio while the security camera footage does not. In articulating the events that transpired, the Court has pieced the two videos together.

stopped walking and stood approximately halfway between the patrol car and the store's entrance. Morrow closed the distance and immediately grabbed at Ghanem's left arm. Ghanem pulled his arm away, stepped back, and began questioning the basis for the arrest.

As Ghanem pulled away, Pharr exited the vehicle. Morrow then pushed Ghanem several feet into the side of the patrol car and both troopers attempted to handcuff him. Ghanem continued to refuse to give up his left arm while questioning his arrest. Roughly twenty seconds after pushing Ghanem against the patrol car, Morrow initiated a takedown by striking the backside of Ghanem's right leg and causing him to fall. Once Ghanem was on the ground, both troopers attempted to restrain and handcuff him while he attempted to get up. After a few seconds of struggle, Ghanem was still not in handcuffs and the troopers forced him onto his knees. Morrow then pushed Ghanem into the back of the patrol car and Pharr stepped back and pulled out a taser. At this point, Ghanem stopped resisting and Morrow handcuffed him. Morrow then walked him to the front of the patrol car where he remained unattended until the troopers finished the traffic stop. The troopers then secured Ghanem in the patrol car and took him to the Lee County Jail, where he was booked and then released after making bail.

Following his release, Ghanem sought medical treatment from his family doctor and completed two weeks of physical therapy before returning to work. Several months later, Ghanem went to a chiropractor to address numbness in his legs that he claims started after the arrest.

The Complaint [1] brings individual capacity claims against Morrow for First Amendment retaliation, as well as for false arrest, restraint of liberty, and excessive force under the Fourth Amendment.[4] Through his present Motion [30], Morrow only seeks dismissal of the excessive

---

[4] To be clear, Ghanem does not assert any claim against Pharr.

3

force claim. He contends that the Court should grant summary judgment in his favor on the basis of qualified immunity. Ghanem opposes dismissal of the claim.

*Legal Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

Where video evidence is available, there is an "exception to the materiality/genuineness rules cited above." *Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015). The reviewing court is "required to 'view the facts in the light depicted by the videotape.'" *Boyd v. McNamara*, 74 F.4th 662, 665 (5th Cir. 2023) (quoting *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022)).

*Analysis and Discussion*

As noted previously, Morrow contends that he is entitled to qualified immunity on the excessive force claim.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 463 (5th Cir. 2022) (citing *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)). "Once a defendant properly pleads qualified immunity, the burden of proof shifts to the plaintiff to negate the defense." *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (citing *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)). To satisfy this burden, the plaintiff must establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (citing *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014)).

The Court first looks to whether Ghanem has established the existence of a constitutional violation. Relevant to the present Motion [30], Ghanem alleges that Morrow violated his Fourth Amendment right to be free from excessive force during his arrest.

"[E]xcessive force claims arising from an arrest or investigatory stop invoke the protection provided by the Fourth Amendment . . . against 'unreasonable seizure.'" *Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021). "Fourth Amendment jurisprudence, however, has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the

5

right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "Thus, determining whether the force used to effect a particular seizure is 'reasonable' for purposes of the Fourth Amendment requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake." *Id.*

"To prevail on a Fourth Amendment excessive force claim, a plaintiff must show '(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Craig*, 49 F.4th at 409 (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). Courts generally consider the second and third elements together, "as officers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)) (internal quotation marks omitted).

"Excessive force claims are necessarily fact intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Craig*, 49 F.4th at 409 (citing *Deville*, 567 F.3d at 167). *Graham* sets forth "three non-exclusive considerations for courts to examine when analyzing the reasonableness of the force used, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Solis*, 31 F.4th at 382 (citing *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

"Importantly, '[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Tucker*, 998 F.3d at 171 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865). "'[N]ot

every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* "Instead, 'the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* at 171 (quoting *Graham*, 490 U.S. at 396-97, 109 S. Ct. 1865). "[T]he overarching question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (citing *Graham*, 490 U.S. at 397, 109 S. Ct. 1865). Courts analyze claims for excessive force "without regard to whether the arrest itself was justified." *Rios v. Perez*, 777 F. Supp. 3d 727, 749 (W.D. Tex. Mar. 31, 2025) (citing *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (collecting cases)).

    *I.    Injury*

First, Ghanem must show he suffered an injury that resulted from force that was excessive to the need—that is, force that was objectively unreasonable. *Welch v. City of Hernando, Mississippi*, 2022 WL 989226, at *4 (N.D. Miss. Mar. 31, 2022). While a plaintiff need not demonstrate a significant injury, it must be more than *de minimis*. *Thomas v. White*, 2024 WL 4311506, at *5 (N.D. Miss. Sept. 26, 2024) (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)).

Here, Ghanem's alleged injuries included soreness in his face, head, neck, back, and knee; numbness in his legs; lingering back pain; and emotional pain. [38] at p. 11-12. Immediately following his release from the Lee County Jail, Ghanem sought treatment from a family doctor for his back pain and attended "rehab" with a physical therapist for two weeks. He stopped his rehab early to resume operating his businesses. [30], Ex. 5 at p. 44-45. Starting in August of 2022,

Ghanem began seeing a chiropractor to treat numbness in his legs—an injury from which he has completely recovered. *Id.* at 45-46.

While Morrow does not appear to contest the first element of Ghanem's excessive force claim, he argues that Ghanem did not suffer any serious injury, which, according to Morrow, establishes that the force was reasonable. Because there is no dispute that Ghanem's injuries are more than *de minimis*, the Court concludes, for purposes of the present Motion [30], that Ghanem has carried his burden as to the first element. The Court will take into account the nature of Ghanem's injuries in its reasonableness analysis.

    II.    *Amount of Force and Reasonableness*

As noted above, "[e]xcessive force claims are necessarily fact intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Craig*, 49 F.4th at 409 (citing *Deville*, 567 F.3d at 167). In assessing reasonableness, the Court considers the following *Graham* factors: "the severity of the crime at issue," "whether the suspect poses an immediate threat to the safety of the officers or others," "and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 410. However, this list of factors is not exhaustive. *Solis*, 31 F.4th at 982. To reiterate, "'[t]he test of reasonableness under the Fourth Amendment is not capable of … mechanical application,'" but instead "requires careful attention" to each case's facts. *Graham*, 490 U.S. at 396, 109 S. Ct. 1865 (citations omitted).

        a.  *Severity of Crime at Issue*

Beginning with the severity of the crime at issue, Morrow concedes that disorderly conduct is not a severe crime. The Court finds this factor weighs in favor of Ghanem.

### b. Immediate Safety Threat

Next, the Court considers whether Ghanem posed an immediate safety threat to the troopers or others. Neither party makes significant argument on this point concerning the events that transpired prior to the arrest. But Morrow argues that Ghanem's active resistance during the effectuation of the arrest posed an immediate threat to the safety of the troopers. The Court agrees with Morrow to some extent, as Ghanem's active resistance certainly posed *some* threat, albeit minimal in light of the fact that he was outnumbered and not in a position to harm them in any significant way. The Court finds that the factor weighs marginally in Morrow's favor.

Thus, the analysis for the first two *Graham* factors collapses into the third *Graham* factor—resistance to arrest. *See generally Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (explaining that when the severity of the crime and immediate safety threat are relatively inconclusive, a suspect's active resistance to arrest may justify elevated degrees of force). The analysis now turns to the most crucial factor to the case *sub judice*.

### c. Resistance to Arrest

The third *Graham* factor is whether Ghanem was "actively resisting arrest or attempting to evade arrest by flight." *Craig*, 49 F.4th at 410. "Resisting while being handcuffed constitutes active resistance and justifies the use of at least *some* force." *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 480 (5th Cir. 2021) (emphasis added). The Fifth Circuit has noted that "[i]n case after case, courts upheld officers' use of takedowns to gain control of suspects who had disregarded lawful police orders or mildly resisted arrest, even when arrestees were suspected of minor offenses and the force employed appeared greater than necessary in retrospect—at least when officers' tactics caused arrestees only minimal injuries." *Buehler v. Dear*, 27 F.4th 969, 989 (5th Cir. 2022). Notably, in his deposition, Ghanem admitted to resisting arrest at multiple points during the arrest.

First, Ghanem admits to resisting arrest by pulling his left arm away from Morrow after being told he was under arrest. [30], Ex. 5 at p. 37. Ghanem then admits he continued to refuse to give up his left arm after being pushed against the patrol car. *Id.* at 38. After the takedown, he continued to resist by trying to get back up. *Id.* at 39.

Although conceding that he did resist arrest, Ghanem avers that his resistance was justified because he was falsely arrested. This argument is a non-starter. Ghanem's "excessive force claim is separate and distinct from [his] unlawful arrest claim, and [this Court] must therefore analyze the excessive force claim without regard to whether the arrest itself was justified." *Bailey v. Ramos*, 125 F.4th 667, 679-80 (5th Cir. 2025) (citing *Freeman*, 483 F.3d at 417).

Next, Ghanem, citing *Trammel v. Fruge*, argues that his resistance of pulling away his arm was merely passive resistance and did not justify the use of force. *Trammel*, 868 F.3d at 343. In *Trammel*, multiple officers attempted to arrest Trammel for public intoxication. *Id.* at 337. When an officer grabbed at Trammel's arm, he pulled away. *Id.* A different officer tried grabbing his arm and Trammel again pulled away. *Id.* One officer then executed a knee strike, causing Trammel to lose balance, and another officer put him in a head lock and pulled him to the ground. *Id.* Trammel's arms were restrained so that he was not able to brace himself, causing him to fall face first into the pavement. *Id.* While on the ground, the officers administered knee strikes to Trammel's arms, thighs, and ribs. *Id.* 337-38. The force resulted in multiple fractures and required Trammel to use a wheelchair at home. *Id.* at 338.

Under these facts, the Fifth Circuit held that there was a genuine dispute of material fact as to whether Trammel was actively resisting arrest and whether the officers' use of force was objectively reasonable. *Id.* at 342. In reaching this conclusion, the court heavily weighed the quickness in which the officers resorted to tackling Trammel. *Id.*

Here, Morrow's use of force is distinguishable. First, Ghanem actively resisted arrest. His resistance is clear on the store security footage, and he admitted as much in his deposition. Second, Morrow only performed a takedown *after* Ghanem continuously refused to give up his arm to be handcuffed. The takedown did not result in Ghanem's face hitting the pavement, nor did Morrow use a headlock or strike Ghanem while he was on the ground. Further, the force only resulted in minor injuries.

In a more analogous case, the Fifth Circuit upheld an officer's use of force as reasonable. *See Martinez v. City of Rosenberg, Texas*, 123 F.4th 285 (5th Cir. 2024). In *Martinez*, an officer stopped Martinez, the plaintiff, for walking on the wrong side of the road—a minor offense. *Martinez v. City of Rosenberg, Texas*, 2023 WL 7290471, at *1 (S.D. Tex. Sept. 27, 2023).[5] The officer testified he did not originally intend to arrest Martinez but told him to "come here" several times. *Id.* Martinez originally complied but, after arguing with the officer and saying that he did nothing wrong, began to walk away. *Id.* The officer then put his arms around Martinez's upper body and took him to the ground to handcuff him. *Id.* Martinez actively resisted the handcuffing and additional officers assisted in the arrest. *Id.* Martinez suffered no broken bones and only some chronic pain. *Id.* The district court held that, despite the underlying offense not being severe and the threat to the officer and public being minimal, the fact that Martinez disobeyed commands, resisted arrest, and was not seriously injured ultimately rendered the force reasonable. *Id.* at *4.

Similarly, in the case *sub judice*, Ghanem was arrested for disorderly conduct—a minor offense—and initially complied with the order to "come here" but resisted when Morrow tried to handcuff him. Morrow also brought Ghanem to the ground without causing serious injury and only

---

[5] The Court will cite to the district court's opinion because it contains more details as to the underlying facts, and the Fifth Circuit ultimately agreed with the analysis.

11

did so after Ghanem resisted arrest for approximately twenty seconds. Ultimately, Ghanem's evidence in this case is weaker than the evidence considered in *Martinez*.

Other cases have reached the same conclusion on similar facts. *See, e.g., Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (finding arresting officer's use of force reasonable because the suspect physically resisted handcuffs); *Weldy v. Hatch*, 481 Fed. Appx. 119, 123 (5th Cir. 2012) (same); *Osborne v. Harris County, Tex.*, 97 F. Supp. 911, 937 (S.D. Tex. Mar. 31, 2015) (finding use of force reasonable where arrestee admitted he resisted arrest). In light of the cases referenced herein, the Court finds that this prong of the analysis weighs heavily in Morrow's favor.

The Court finds that the *Graham* factors—specifically resistance to arrest—favor a finding of reasonableness. However, the Court also finds it appropriate to look to other facts in the record. *See Solis*, 31 F.4th at 982.

### d. Other Considerations

The Fifth Circuit has made clear that the *Graham* factors are non-exhaustive, and the Court finds it appropriate in this case to take into account the speed with which Morrow resorted to force. *Id.*; *see also Thomas*, 2024 WL 4311506 at *14 (citing *Trammel*, 868 F.3d at 342) (explaining that "the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need"). The Fifth Circuit has made clear that an officer's use of force is reasonable when it involves a "measured and ascending response[]" to a plaintiff's noncompliance. *See Galvan v. City of San Antonio*, 435 Fed. Appx. 309, 311 (5th Cir. 2010). Here, Morrow's use of force escalated as Ghanem continued to resist arrest. In other words, the force increased as the resistance and noncompliance increased.

The video footage and deposition testimony show that Morrow told Ghanem to "come here" and gestured to the front of the patrol car. [30], Ex. 2 at 10:44-10:50; Ex. 5 at p. 26. As

Ghanem was walking, Morrow informed him that he was under arrest. In response, Ghanem stopped walking—his first instance of noncompliance. Morrow gestured for Ghanem to continue to walk to the front of the patrol car. Ghanem refused. Morrow then approached Ghanem and attempted to arrest him, but Ghanem pulled his left arm away and stepped away.

Morrow then pushed Ghanem into the side of the patrol car and both troopers attempted to handcuff him. He again refused by not giving up his left arm to be handcuffed. It was only after Ghanem resisted for approximately twenty seconds that Morrow executed a takedown maneuver.[6] After the takedown, Ghanem continued to resist by trying to get up and the troopers brought him to his knees facing the back of the patrol car.

At this point, Ghanem ceased resistance. Crucially, once Ghanem stopped resisting, all use of force stopped. The Court finds that fact to be critical. *See Bailey*, 125 F.4th 667, 683-84 (reversing the denial of summary judgment when the officer stopped the force immediately after arrestee was handcuffed); *compare Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 847 (5th Cir. 2009) (affirming the denial of summary judgment where the officer executed a knee strike after arrestee was handcuffed); *see also Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013) (finding "the use of certain force after an arrestee has been restrained and detained and handcuffed is excessive and unreasonable").

Lastly, although addressed briefly in connection with the first element, the Court again considers the seriousness of Ghanem's injuries. The Fifth Circuit has held that "[i]n evaluating excessive force claims, courts may look to the seriousness of injury to determine whether the use of force could plausibly have been thought necessary." *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018) (citing *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009)). A minor injury can

---

[6] In contrast to the case at bar, in *Trammel*, only three seconds elapsed between one officer's initial request that Trammel place his hands behind his back and the officers tackling him. *Trammel*, 868 F.3d at 342.

13

preclude summary judgment on the injury element while also supporting that an officer acted reasonably. *Buehler*, 27 F.4th at 982-83.

Here, Ghanem's injuries consisting of generic soreness, mental anguish, and pain in his legs and back are properly characterized as minor. *Id.* at 983 (characterizing bruises, abrasions, mental anguish as "relatively minor"); *accord Brooks v. City of West Point, Miss.*, 639 Fed. Appx. 986, 990 (5th Cir. 2016) (characterizing back and neck pain as *de minimis*).

Taking into account the underlying facts as a whole, the Court finds that Morrow responded with "measured and ascending" actions that corresponded to Ghanem's continual verbal and physical resistance. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). His use of force was reasonable and did not violate the Fourth Amendment.

Because this Court finds there was no constitutional violation, it need not address whether the right at issue was clearly established at the time. *See*, *e.g.*, *Waddell v. Tishomingo County, Mississippi*, 2022 WL 683094, at *7 (N.D. Miss. Mar. 3, 2022).

*Conclusion*

For the reasons set forth above, the Defendant's Motion for Partial Summary Judgment [30] is GRANTED. Ghanem's excessive force claim is hereby DISMISSED *with prejudice*. He will be permitted to proceed on his remaining claims.

SO ORDERED, this the 3rd day of December, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE